Plaintiff-appellant, Jacqueline Adams, as guardian of Bertina Hards (hereinafter "appellant"), appeals from the granting of summary judgment by the trial court in favor of defendants-appellees, Dean Witter Reynolds, Inc. and Thomas Moore (hereinafter "appellees"). Appellee, Thomas Moore, was at all times relevant an agent and employee of co-appellee Dean Witter Reynolds, Inc.
Appellant filed suit in the instant matter on June 4, 1997. The complaint alleged that the appellees engaged in a course of conduct over a period of years in which the account that the appellant's late mother maintained with the appellees was negligently and/or fraudulently managed, resulting in significant financial loss. After the appellees had answered the complaint and the parties were given an opportunity to engage in discovery, appellees filed a motion for summary judgment. The motion for summary judgment did not address the merits of the complaint, but rather alleged only that the complaint was filed outside of the applicable statute of limitations. The trial court granted the motion for summary judgment, without opinion, on March 27, 1998. This appeal was timely commenced thereafter.
Bertina Hards maintained several accounts with the appellees throughout the mid-1980s and 1990s. Appellant alleged in her complaint that the nature of the investments that were made on behalf of her mother were not suited to a person of her mother's circumstances and advanced age.[1] There were no specific allegations of fraud in the complaint.
The relevant time line as to the transactions between the parties was as follows. The appellant's mother had three accounts with the appellees. In response to appellees' interrogatories, the appellant identified eight specific investments which she considered to have been ill-advised. The last such of these eight investments was purchased on May 4, 1992.
On June 1, 1992, the appellees were first contacted by the appellant's mother concerning potential dissatisfaction with the performance of certain investments. The correspondence requested a complete account history. During the following three to four months, the appellant and/or her mother requested information, via letter, from the appellees no less than four times. In one of these letters, the appellant indicated to the appellees that the situation was being reviewed by her attorney.
In 1993, the appellant initiated proceedings in Cuyahoga County Probate Court to have herself appointed her mother's guardian. In reports dated May 18, 1993 and July 16, 1993, respectively, two independent medical experts declared that the appellant's mother was fully competent to manage her own affairs, including managing her own financial assets. Appellant eventually withdrew her application for guardianship with the Cuyahoga County Probate Court. Appellant subsequently re-filed an application for guardianship of her mother in Lake County Probate Court. Appellant was appointed as her mother's guardian by the Lake County Probate Court on April 10, 1995, the same day the court ruled that her mother was not competent to manage her own affairs.
The appellant assigns three assignments of error for this court's review. As the following three assignments of error all have a common basis in law and fact, this court will address them simultaneously:
 I. THE TRIAL COURT IMPROPERLY GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS THERE EXISTS A VARIETY OF GENUINE ISSUES OF MATERIAL FACT.
 II. THE STATUTE OF LIMITATIONS IS DEEMED TO BE TOLLED WHEN A PERSON IS DETERMINED TO BE OF UNSOUND MIND.
 III. THROUGH THE IMPROPER GRANTING OF SUMMARY JUDGMENT, THE TRIAL COURT DENIED THE APPELLANT OF (SIC) HER RIGHT TO A TRIAL BY JURY AS GUARANTEED BY THE CONSTITUTION OF THE STATE OF OHIO.
Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1;Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317.
It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56 (C) showing a genuine issue for trial exists. Id.
This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56 (C). "The reviewing court evaluates the record * * * in light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion."Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50; Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741.
The relevant statute of limitations for allegations of claims involving fraud in the sale of securities is set out in R.C.1707.43, which is titled "Remedies of Purchaser in Unlawful Sale":
 No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of sale or a contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period. (Emphasis added.)
The appellant herein contends that her cause of action sounds in fraud and, therefore, is governed by the four year statute of limitation for fraud found in R.C. 2305.09 (C), rather than the two year statute of limitations from the time an investor is aware of the facts underlying a case for unlawful acts in the sale of securities as provided in R.C. 1707.43. Even if this court were to find that the applicable statute of limitations governing the instant matter was four years rather than two, and we expressly decline to make such a finding, the complaint, nonetheless, would have been time-barred when it was filed.
The very latest date in which the appellant and her mother became aware of the facts underlying their cause of action was June 1, 1992, when the appellant and her mother sent the first of a series of letters to the appellee in which they requested all relevant account records and informed the appellees that they had retained an attorney. Therefore, they were obligated under R.C.1707.43 to file their lawsuit by June 1, 1994. This action was filed on June 4, 1997, more than five years after latest possible date that the appellant and her mother were aware of the facts underlying appellant's claim, and more than five years after the last sale of securities by the appellees to the appellant's mother.
The appellant's argument that the statute of limitations was tolled by her mother's impaired mental state, as provided in R.C.2305.16, is flawed for several reasons. Initially, it should be noted that in order to benefit from the tolling provisions of R.C.2305.16, it must be shown that the person entitled to bring the cause of action was of unsound mind at the time that the cause of action accrued. R.C. 2305.16 states in pertinent part:
 [I]f a person entitled to bring [an] action * * * is at the time the cause of action accrues, within the age of majority or of unsound mind, the person may bring it within the [applicable statute of limitations] after the disability is removed.
 After the cause of action accrues, if the person entitled to bring a cause of action becomes of unsound mind and is adjudicated as being of unsound mind by a court of competent jurisdiction * * * the time during which the person is of unsound mind and so adjudicated * * * shall not be computed as any part of the period within the action must be brought.
In the case at bar, there is no question but that the appellant's mother was of sound mind at the time her cause of action accrued. As was mentioned earlier in this opinion, two medical experts opined in May and July of 1993 that the appellant's mother was of sound mind and was capable of managing her own affairs. Therefore, the appellant can only avail herself of the second paragraph of R.C. 2305.16. Where it is claimed that a person entitled to bring the cause of action became of unsound mind after the accrual of the cause of action, the evidence on that issue must include a determination by a court, or evidence of hospitalization or institutionalization for the condition causing the mental defect. Bradford v. Surgical Med. Neurology Assoc.,Inc. (1994), 95 Ohio App.3d 102. The determination by the Lake County Probate Court in this case that the appellant's mother was of unsound mind, did not come until April 10, 1995, more than ten months after the statute of limitations had already expired. Additionally, on the same day that the appellant's mother was adjudicated incompetent, the appellant was appointed as her guardian. Once appellant was appointed as her mother's guardian, she could no longer benefit from the tolling provisions contained in R.C. 2305.16. Seguin v. Gallo (1985), 21 Ohio App.3d 163. The instant lawsuit was not filed until more than two years after the appellant was appointed as her mother's guardian.
The evidence presented by the appellant in an attempt to establish that her mother was incompetent to manage her affairs prior to the adjudication by the Lake County Probate Court, is insufficient as a matter of law. R.C. 2305.16 specifically provides that when a person entitled to bring a cause of action becomes incompetent after the cause of action accrues, the individual bringing suit on their behalf must present evidence of an adjudication of incompetency or hospitalization. Bradford,supra, 95 Ohio App.3d at 106. The evidence presented by the appellant in this case included two affidavits, one from the appellant and one from the family accountant, stating that the appellant's mother was showing signs of forgetfulness as early as 1990. Neither the appellant, nor her accountant, have held themselves up as medical experts. The fact that the appellant may have shown signs of ageing as early as 1990 does not entitle the appellant to avail herself of the tolling provisions of R.C.2305.16. It is generally understood that all persons experience signs of ageing and decreased mental capacity throughout their lives, beginning as early as middle age. If every person who became forgetful in the conduct of his affairs was eligible to be declared of "unsound mind" by submitting affidavits from family members, the protections afforded by the statute of limitations found in R.C. 1707.43
would be rendered nearly worthless. Therefore, the trial court did not err as a matter of law when it held that the tolling provisions of R.C.2305.16 were not applicable to this case.
The appellant did not bring this cause of action until well more than two years after she and her mother were aware of the operative facts underlying appellant's claim for relief. Thus, her complaint was time barred by the two year statute of limitations contained in R.C. 1707.43. Even if a four year statute of limitations were to be applied to the instant facts, the case was still filed well outside of the statutorily permitted period. The appellant's mother was not adjudicated incompetent until April 10, 1995, almost three years after her last transaction with the appellees and the same day that the appellant was appointed as her mother's guardian. The appellant then waited an additional period of more than two years to file the within lawsuit. Therefore, we hold that summary judgment was properly granted. The appellees assignments of error are not well taken.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL, P.J., and BLACKMON, J., CONCUR.
 ___________________________________ MICHAEL J. CORRIGAN, JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also S.Ct.Prac.R. II, Section 2(A)(1).
[1] It is not clear from the complaint whether the appellant alleged actual fraud on the part of the appellees. The appellant's appellate brief states that "it is unknown what exactly was said between the parties * * *. The negative inference of this uncertainty, coupled with the facts that unwise investments were made, lead to the conclusion that the appellees must have made some sort of representation as to the character of their products * * *."